

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Mark L. Hopkins,<br><br>　　　　Defendant.<br>_____/ | Case: 4:21-cr-20066<br>Judge: Davis, Stephanie Dawkins<br>MJ: Ivy, Curtis<br>Filed: 02-03-2021 At 01:50 PM<br>SEALED MATTER (TT)<br><br>Violation:<br>18 U.S.C. § 1343 |

# INDICTMENT

THE GRAND JURY CHARGES:

*Relevant Persons and Entities*

At all times material to this Indictment:

1.　As President of Worklife Wealth Financial ("Worklife") from at least 2010 through December 2018, Defendant Mark L. Hopkins provided financial advice to and investment services for Worklife customers. Hopkins worked at Worklife's office, located in Grand Blanc, within the Eastern District of Michigan.

2.　From at least 2010 through December 2018, Hopkins was also affiliated with a brokerage firm, American Portfolios Financial Services, Inc. ("American Portfolios"), based in Holbrook, New York. As a registered representative for American Portfolios, Hopkins helped manage customer accounts, trade securities,

and otherwise invest money for customers from his Grand Blanc office.

3. American Portfolios retained Pershing LLC ("Pershing") to provide recordkeeping and operational services for its customers. Pershing processed securities transactions, distributed payments, and maintained custody of assets and records for American Portfolios customers, among other services. Pershing is based in Jersey City, New Jersey.

4. S.C., L.C., and A.C. were customers of Hopkins and American Portfolios who gave money to Hopkins for investing purposes. They all reside in Michigan. S.C. and L.C. are a married couple in their mid-60s, and S.C. handled investments for his mother, A.C., who is in her late 80s.

5. K.D.C. and K.M.C. were customers of Hopkins and American Portfolios who gave money to Hopkins for investing purposes. They reside in Michigan and are a married couple who are 66 and 70 years old respectively.

6. From at least 2011 through June 7, 2016, Hopkins owned the Jewel of Grand Blanc Golf Course, located in the Eastern District of Michigan, through the Jewel of Grand Blanc, LLC. To help operate the golf course, Hopkins used a business checking account (##859)("Account-1") at ELGA Credit Union, in the name of the Jewel of Grand Blanc LLC. Individual-1, who helped manage the golf course, also had authority to make transactions with funds in Account-1 from April 2011 through 2018.

7. On June 7, 2016, Hopkins sold the Jewel of Grand Blanc Golf Course to Individual-2, who bought the golf course through his company. The next day, Individual-2 opened a business checking account (##121)("Account-2") at ELGA Credit Union. From June 8, 2016 through 2018, Individual-2 had authority to make transactions with funds in Account-2. As a co-signer on this account, Individual-1 also had authority to make transactions with funds in Account-2.

### *The Scheme to Defraud*

8. In early September 2017, Hopkins fraudulently advised his customer, S.C., of a new investment opportunity through ELGA Credit Union. The purported investment involved a loan to the credit union for the construction of a new branch office, with a return of six percent over six months. Relying on Hopkins's representations about this investment, S.C. agreed to give Hopkins two checks to invest in it: one for $250,000 and one for $500,000. The check for $250,000 came from an account belonging to S.C. and L.C. The check for $500,000 came from A.C.'s account.

9. In truth, as Hopkins then and there well knew, ELGA Credit Union did not have any such business loan program.

10. On September 8, 2017, Hopkins received the two checks from S.C. and deposited them into Account-1 at ELGA Credit Union within the Eastern District of Michigan. Immediately after, Hopkins had the $750,000 total transferred into

Account-2 at ELGA Credit Union, an account that Hopkins did not have authority over.

11. Hopkins later provided customers S.C., L.C., and A.C. falsified account statements, which purported to be from ELGA Credit Union.

12. About seven months later, the $750,000 that Hopkins had transferred from Account-1 into Account-2 had been reduced to less than $1,000. The expenditures from Account-2 were unrelated to any ELGA business loan program.

13. After S.C. repeatedly inquired about the promised investment return of six percent in the Spring of 2018, Hopkins fraudulently advised a second set of customers, K.D.C. and K.M.C., of an investment opportunity. Hopkins told them about a new business loan program through ELGA Credit Union in which they would receive a return of six-to-seven percent over a period of approximately nine months.

14. In truth, as Hopkins then and there well knew, ELGA Credit Union did not have any such business loan program.

15. On or about May 23, 2018, Hopkins visited K.D.C. and K.M.C. in the Eastern District of Michigan and informed them that they could transfer money from their American Portfolios account to ELGA Credit Union to invest in this purported business loan program. Hopkins provided K.D.C. and K.M.C. a Letter of Authorization, which authorized the disbursement of $400,000 from one of their

4

American Portfolios accounts. Relying on Hopkins's fraudulent representations, K.D.C. and K.M.C. signed the Letter of Authorization, which instructed American Portfolios to mail a $400,000 check to the Jewel of Grand Blanc, located in Grand Blanc, Michigan.

16. On or about June 1, 2018, Hopkins wired, or caused to be wired, this Letter of Authorization to American Portfolios in New York. The Letter of Authorization was transmitted by electronic communication via the internet from Michigan to New York.

17. On or about June 1, 2018, American Portfolios received the Letter of Authorization. American Portfolios forwarded the Letter of Authorization by electronic communication to New Jersey where Pershing generated a check for $400,000 and mailed it to the Jewel of Grand Blanc.

18. On or about June 4, 2018, Hopkins deposited, or had deposited, the $400,000 check into Account-1. Before making this deposit, Account-1 had less than $12,000 in it.

19. On or about June 12, 2018, Hopkins had a cashier's check created, payable to S.C. and L.C. for $267,500, that he provided to S.C. as the purported principal and interest on their original $250,000 investment. This cashier's check was drawn from Account-1 with nearly all of the funds derived from the $400,000 deposit made eight days earlier.

20. As of the date of this Indictment, Hopkins has failed to return the $500,000 he received from A.C.

21. As of the date of this Indictment, Hopkins has failed to return the $400,000 he received from K.D.C. and K.M.C.

### *Hopkins's Concealment of the Scheme*

22. In June through August 2018, American Portfolios employees questioned Hopkins about the $400,000 withdrawal from K.D.C. and K.M.C.'s account and other aspects of Hopkins's activities with customers. An American Portfolios employee asked Hopkins to return the $400,000 to K.D.C. and K.M.C.

23. On August 1, 2018, Fifth Third Bank issued a cashier's check payable to K.D.C. for $400 from bank account (##860)("Account-3"). After its issuance, a copy of this check was altered by changing the amount from $400 to $400,000.

24. In early August 2018, Hopkins met with K.D.C., and showed him the altered cashier's check, payable to K.D.C. for $400,000, from Fifth Third Bank. Hopkins also presented a typewritten letter fraudulently alleging that Hopkins had returned the $400,000 to K.D.C. Hopkins told K.D.C. that American Portfolios wanted this money returned to K.D.C., but Hopkins recommended keeping this money invested at the credit union. Trusting Hopkins's representations, K.D.C. signed the letter even though he did not get the $400,000 back. Hopkins knew in truth, and in fact, that he had not returned the $400,000 to K.D.C. because, among other

reasons, he used most of the $400,000 to provide an "investment return" to customers S.C. and L.C. in June 2018.

25. On or about August 3, 2018, Hopkins sent a copy of the altered cashier's check and a copy of the typewritten letter signed by K.D.C. to American Portfolios to make it appear that Hopkins had returned the $400,000 to K.D.C.

26. After K.D.C. requested documentation of his investment in the fall of 2018, Hopkins later provided K.D.C. a falsified account statement, which purported to be from ELGA Credit Union.

## COUNT ONE
### 18 U.S.C. § 1343 - Wire Fraud

27. Paragraphs 1 through 26 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

28. From about September 2017 and continuing through at least January 2019, in the Eastern District of Michigan and elsewhere, defendant Mark L. Hopkins, knowingly, intentionally, and willfully and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmitted and caused to be transmitted by means of wire communication, writings, signs, signals, pictures, and sounds in interstate commerce for the purpose of executing such scheme and

7

artifice.

## Use of the Wires

29. On the approximate date specified, in the Eastern District of Michigan and elsewhere, Hopkins, in executing the above-described scheme and artifice to defraud, knowingly transmitted and caused to be transmitted, by wire communication, writings, signs, signals, pictures, and sounds in interstate commerce for the purposes of executing such scheme and artifice, as set forth below:

| Count | Investor Account | Approximate Date | Description of Wire Transmission |
|---|---|---|---|
| 1 | K.D.C. K.M.C. | June 1, 2018 | Electronic Communication of Letter of Authorization |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

**18 U.S.C. § 981(a)(1)(C) with 28 U.S.C § 2461(c) - Criminal Forfeiture**

The allegations contained in Count One above are hereby realleged and incorporated by reference as if set forth in full herein, for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C) together with Title 28, United States Code, Section 2461(c).

Upon conviction of the violation set forth in Count One of the Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) together with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to said violation.

The property to be forfeited includes, but is not limited to, the following:

If any of the property described above as subject to forfeiture, as a result of any act or omission of the defendants:

(a)   Cannot be located upon the exercise of due diligence;

(b)   Has been transferred or sold to, or deposited with, a third party;

(c)   Has been placed beyond the jurisdiction of the Court;

(d)   Has been substantially diminished in value; or

(e)   Has been commingled with other property that cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

Money Judgment: Upon conviction of the violation alleged in the Indictment, the defendants shall be ordered to pay a sum of money representing the total amount of gross proceeds obtained as a result of his or her offense(s).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 241(c); Title 21, United States Code, Section 853, and Federal Rule of Criminal Procedure 32.2.

**THIS IS A TRUE BILL.**

s/GRAND JURY FOREPERSON

Dated: 2-3-2021

SAIMA S. MOHSIN
Acting United States Attorney

s/BLAINE T. LONGSWORTH
Assistant United States Attorney
600 Church Street, Flint, MI 48502
P55984

s/ANN NEE
Assistant United States Attorney

ANTHONY P. VANCE
Assistant United States Attorney
Chief, Branch Offices

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Companion Case Information**

This may be a companion case based upon LCrR 57.10 (b)(4)[1]:

☐ Yes   ☐ No

Case: 4:21-cr-20066
Judge: Davis, Stephanie Dawkins
MJ: Ivy, Curtis
Filed: 02-03-2021 At 01:50 PM
SEALED MATTER (TT)

Case Title: USA v. MARK L. HOPKINS

County where offense occurred: Genesee

Check One:   ☒ Felony   ☐ Misdemeanor   ☐ Petty

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:                    ]
____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

Superseding to Case No: _____   Judge: _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

February 3, 2021
Date

s/BLAINE T. LONGSWORTH

BLAINE T. LONGSWORTH, AUSA
600 Church Street, Ste. 210, Flint, MI 48502
Phone: (810) 766-5177
Fax:    (810) 766-5427
E-Mail address: blaine.longsworth@usdoj.gov
Attorney Bar #: P55984

---

[1] *Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.*